**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

**LESLIE HENDRICKSON,**

**Plaintiff,**

**v.**

**BANCO POPULAR de PUERTO RICO,**

**Defendant.**

**1:26-cv-00020-RAM-EAH**

**TO: Leslie Hendrickson, Pro Se**
**Micol L. Morgan, Esq.**

**ORDER**

**THIS MATTER** comes before the Court on the Renewed Motion to Compel Arbitration or, in the Alternative, to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (the "Motion to Compel"), filed on September 11, 2026 by Defendant Banco Popular de Puerto Rico ("Banco Popular" or the "Bank"). Dkt. No. 29. Plaintiff Leslie Hendrickson, appearing pro se and fee paid, opposed the motion on September 25, 2026 by filing an "Objection and Motion to Strike Defendant Third Motion to Compel Arbitration . . . for Defendant Unclean Hands and Fraudulent Concealment of Plaintiff's Property and Rights as Verification for Objection to Defendant's Third Motion to Compel or, in the Alternative, to Dismiss." Dkt. No. 39. Also on September 11, 2026, Banco Popular filed a Renewed Motion to Stay the Court's September 25, 2026 Order Setting Initial Conference. Dkt. No. 30. On September 25, 2026, Ms. Hendrickson filed a Second Motion for Entry of Default. Dkt. No. 37. For the reasons that follow, the Court will: (1) grant the Motion to Compel Arbitration and stay the proceedings in this case until the arbitration matter has concluded; (2) deny as moot

the Bank's Motion to Stay; (3) deny Ms. Hendrickson's Motion to Strike; and (4) deny Ms. Hendrickson's Second Motion for Entry of Default.

**BACKGROUND**

Ms. Hendrickson filed a Complaint in this matter on July 14, 2026. Dkt. No. 1. The Complaint consists of three parts: (1) the Court's employment discrimination complaint standard form, Dkt. No. 1; (2) a separate narrative that provided factual allegations and described the bases for her hostile work environment, retaliation, and constructive discharge claims under Title VII of the Civil Rights Act of 1964, Dkt. No. 1-2; and (3) an affidavit that provided additional details surrounding Ms. Hendrickson's employment. Dkt. No. 1-4. On the form Complaint, Ms. Hendrickson checked certain categories of discriminatory acts: hostile work environment, unequal terms and conditions of employment, retaliation, termination of employment, and lack of due process in termination. Dkt. No. 1 at 3. She also alleged she was discriminated on the basis of race (Afro-Caribbean-Native Virgin Islander-African American), color (Black), national origin (Native Virgin Islander and Caribbean Woman), and age. *Id.* She received a Notice of Right to Sue Letter from the EEOC on April 14, 2026. *Id.* at 5.

In her narrative Complaint, Ms. Hendrickson alleged that she was employed by Banco Popular in July 2005, was promoted, and in 2016 became the Assistant Branch Manager at the Sunny Isle Branch and then Acting Manager the Sunshine Mall Branch on St. Croix from 2021 to July 2025. Dkt. No. 1-2 at 2. She asserted that from June 2024 to January 2025, the employment of Ms. Maricela Santos at the Sunshine Mall Branch created a hostile work

environment for her and other employees who did not speak Spanish, which was exacerbated by the Bank's Human Resources ("HR") Department. *Id*. at 3. The HR Department addressed employee conflicts at the Branch without informing Ms. Hendrickson. In February 2025, after 19 years of service, Ms. Hendrickson was summoned to a meeting without any prior notice and her employment was terminated. She alleged that Banco Popular cannot provide any evidence that she intended to voluntarily resign. The actions by the HR Department in, inter alia, undermining her managerial authority, ignoring her complaints, and encouraging insubordination by Ms. Santos created a hostile work environment and led to her constructive discharge. *Id*. at 4-5. She further alleged Banco Popular retaliated against her by contributing to the denial of unemployment benefits after she was constructively discharged. *Id*. at 5. Ms. Hendrickson seeks compensatory damages, back pay, front pay, lost benefits, emotional distress damages, costs of $250,000, and pre-judgment and post-judgment interest. *Id*.

Banco Popular filed an initial Motion to Compel Arbitration or, in the Alternative, to Dismiss for Failure to State a Claim, on August 17, 2026, Dkt. No. 12, which the Court struck as non-compliant with the Local Rules of Civil Procedure, Dkt. No. 15. The Bank refiled the motion on August 20, 2026, Dkt. No. 18, which the Court denied without prejudice on September 2, 2026 because the Employment Contract upon which the Bank based its Motion to Compel named "Leslie Yarwood," a stranger to the litigation, as the employee. Dkt. No. 24.

Banco Popular then filed the instant Renewed Motion to Compel. Dkt. No. 29. It stated that Ms. Hendrickson, "who at the time went by the name Leslie Yarwood," entered into a

valid and enforceable Employment Contract on July 18, 2005 with the Bank, which it attached as Exhibit A. Dkt. No. 29 at 1; Dkt. No. 29-2. The Bank also provided a Declaration from a Banco Popular Human Resources Officer who averred that Ms. Hendrickson was formerly known as Leslie Yarwood, Dkt. No. 29-3.

Banco Popular bases its argument to compel arbitration on the text of Article V—the "Binding Grievance and Arbitration Procedure"—contained in the Employment Contract, Dkt. No. 29-2 at 2-3, and cites certain text from the Contract in support.

- The express terms of the Contract required Ms. Hendrickson to follow "Binding Grievance and Arbitration Procedures." Dkt. No. 29 at 2, citing Dkt. No. 29-2 at 2.
- The arbitrator had the authority to determine if the employee was discharged for just cause, to rule on alleged statutory violations and tort causes of action, and award damages. *Id.* citing Dkt. No. 29-2 at 2.
- The parties agreed that "the sole, final, binding and exclusive remedy" for breach of the contract would be the grievance and arbitration procedures set out therein, and that an arbitrator's decision would be "final and binding on the parties," *Id.*
- Article VI ("Intention of the Parties") stated that it was "the specific intention and understanding of the parties to provide for binding arbitration as provided for in Article V above for any statutory causes of action or actions arising out of tort, or arising out of the employment relationship or termination of the employment relationship, including but not limited to Title VII of the Civil Rights Act of 1964 as amended." *Id*. citing Dkt. No. 29-2 at 4.

Banco Popular adds that Ms. Hendrickson had an opportunity to review the Contract, and both parties signed it in front of witnesses who also signed their names. Subsequently, Ms. Hendrickson worked at the Bank until February 4, 2025 when she voluntarily resigned from her position. *Id*. citing Dkt. No. 1-1. The Bank attached to its Motion a copy of Ms. Hendrickson's September 2025 charge of discrimination that she filed with the Equal Employment Opportunity Commission ("EEOC"), where she checked boxes asserting discrimination based on age and national origin. *Id*., citing Dkt. No. 29-4. Banco Popular responded to the EEOC Charge and, in April 2026, the EEOC's Local Office Director issued a Determination and Notice of Rights in which he informed Ms. Hendrickson that the EEOC had dismissed her charge and that she could sue within 90 days of her receipt of the notice. *Id.* at 3, citing Dkt. No. 8. Ms. Hendrickson initiated the instant action on July 14, 2026, ninety-one days later. *Id*.

The Bank argues that Ms. Hendrickson should be compelled to arbitrate all of the claims in her Complaint given that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., governs the Contract between her and Banco Popular and requires such arbitration. *Id*. at 7-8. Ms. Hendrickson knowingly and voluntarily entered into the Contract for purposes of employment at the Bank, and the Contract expressly included binding grievance and arbitration procedures and provisions describing the scope of the arbitrator's authority and language clarifying that arbitration would cover statutory causes of action, including Title VII claims. *Id*. at 10. In exchange for her services, Banco Popular agreed to pay a salary during her employment, satisfying the mutual assent and mutual consideration aspects of contract

formation, and the Contract should be deemed valid and enforceable. *Id.* at 11. The Contract should also be deemed to affect interstate commerce because the Bank's principal place of business was in Puerto Rico and Ms. Henderson worked at a bank branch on St. Croix. *Id*. Further, the three Title VII claims asserted in the Complaint were specifically referenced in the Contract as being subject to binding arbitration; the provision was broad and case law provides a presumption of arbitrability. *Id.* at 12. In sum, applying Virgin Islands contract law and binding precedent, the Contract was valid and enforceable, it sufficiently affected commerce in a territory of the United States that falls within the FAA's ambit, and Ms. Hendrickson's Title VII claims fell squarely within the scope of the Contract. *Id.*

Banco Popular goes on to argue that, if Ms. Hendrickson is not compelled to arbitrate all of her claims, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). *Id.* at 12-17.[1]

On the same day that Banco Popular filed the Renewed Motion to Compel, it also filed a Renewed Motion to Stay the Court's September 2, 2026 Order Setting Initial Conference. Dkt. No. 30. The Bank argues that all four elements of the test for staying discovery are met in this case. *Id.*

On September 18, 2026, Ms. Hendrickson filed a Second Motion for Entry of Default in which she argued that Banco Popular had not timely responded to her Complaint. Dkt. No. 37. She contended that although the Bank timely filed the first Motion to Compel/Motion to

---

[1] Because this Order grants the Bank's Motion on the ground that it will compel arbitration, it does not address the arguments raised in support of the motion to dismiss.

Dismiss, the Court struck that filing and by the time the Bank filed a compliant motion, the deadline to file an answer had expired. *Id.*

On September 25, 2026, Ms. Hendrickson filed an "Objection and Motion to Strike Defendant [sic] Third Motion to Compel Arbitration. . . for Defendant [sic] Unclean Hands and Fraudulent Concealment of Plaintiff's Property and Rights as Verification for Objection to Defendant's Third Motion to Compel or, in the Alternative, to Dismiss." Dkt. No. 39. The document opposes the Motion to Compel and also seeks to strike it. The filing contains a mixture of arguments concerning her termination and subsequent requests for her employment file, and various allegations concerning Banco Popular's alleged fraud, bad faith, and unclean hands surrounding the litigation (including filing the instant motion). *Id.*

In particular, Ms. Hendrickson contends that the Motion to Compel "was procured and filed through conduct that is untimely, misleading, and is a direct prejudice to Plaintiff's Complaint-Claim." *Id*. at 1. She asks the Court to strike the Motion as it was tainted by fraud, bad faith, and/or unclean hands because the Bank forced her to resign her position and did not subsequently provide documents she requested (her employment file). *Id.* at 3-4, 6-7. Ms. Hendrickson points out that Banco Popular filed three Motions to Compel or Dismiss that did not comply with the "one motion rule," Fed. R. Civ. P. 12(g)(2),[2] which indicated that the Bank attempted to evade procedural requirements and to defy the Order striking the Court's initial

[2] Fed. R. Civ. P. 12(g)(2) provides that, with some exceptions, a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Motion to Compel. *Id*. at 3-4, 7-8. Allowing a third Motion to Compel would "make the Court an instrument of inequity." *Id*. at 7-8.

In her Objection/Motion to Strike, Ms. Hendrickson does not directly address the arguments Banco Popular raised in support of its Motion to Compel. She states in passing that, when she was being promoted to management, Defendants should have told her that the "Adhesive Employer Contract between the parties should have been amended and updated." Dkt. No. 39 at 3. She denied the claim made by Defendant's attorney (at an unknown point) that when she was promoted to Manager she was aware of the Contract. *Id.* She asserts that she "had not thought about the contract and considered the documents that confirmed her promotion as a new beginning in management." *Id.*

## DISCUSSION

### I. Motion to Compel Arbitration

#### A. Standard of Review

As a threshold matter, when deciding a motion to compel arbitration, a court must first determine the applicable standard of review: whether it applies a motion to dismiss standard under Rule 12(b)(6) or a summary judgment standard under Rule 56. *See Berkelhammer v. ADP Totalsource Grp., Inc.*, 74 F.4th 115, 117 n.3 (3d Cir. 2023). The Circuit's test for determining which standard applies is described in *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

> [W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be

> considered under a Rule 12(b)(6) standard without discovery's delay.' But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration *with additional facts sufficient to place the agreement to arbitrate in issue*, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'

*Id.* at 776 (citation modified). Ms. Hendrickson's Complaint did not mention the Employment Contract at all. Banco Popular provided a copy of the Contract attached to its Motion to Compel, Dkt. No. 29-2, but did not discuss the standard of review.

Case law provides that, "[i]f a party attaches an authentic arbitration agreement to a Motion to Compel arbitration, the Court must apply the Rule 12(b)(6) standard unless the plaintiff responds to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Parker v. Briad Wenco, LLC*, No. 18-cv-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) (internal quotation marks omitted). Here, Plaintiff's Opposition to the Motion to Compel is, for the most part, grounded in procedural objections to the filing rather than placing the agreement to arbitrate in issue. As a result, the Rule 12(b)(6) standard applies. *See Deardorff v. Cellular Sales of Knoxville, Inc.,* No.19-cv-2642, 2022 WL 407396, at *3 (E.D. Pa. Feb. 9, 2022). In applying the Rule 12(b)(6) standard to Banco Popular's Motion to Compel Arbitration, the Court will examine the Complaint and the Employment Contract to determine if any reading of these documents could relieve Ms. Hendrickson of the obligation to arbitrate. *See Parker v. Briad Wenco, LLC*, No. 18-cv-4860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("Accordingly, when applying the Rule 12(b)(6) standard to a motion to compel arbitration, courts should examine whether there

can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision.") (citation modified).

**B. Applicable Law**

The Federal Arbitration Act ("FAA") provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a "strong federal policy in favor of resolving disputes through arbitration." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (citation modified). Thus, "the [FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

The FAA places arbitration agreements "upon the same footing as other contracts, . . . [making] arbitration agreements as enforceable as other contracts." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338–39 (3d Cir. 2023) (citation modified). Given that "arbitration is a matter of contract," courts must enforce such contracts "according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 64, 67 (2019). As a result, "a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "[A] court may submit to arbitration only those disputes . . . that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (citation modified).

Prior to compelling arbitration pursuant to the FAA, a court must first conclude that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. A "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (citation modified); *Egan v. Regeneron Pharms. Inc.*, No. 22-CV-1981, 2023 WL 1997444, at *3 (D.N.J. Feb. 10, 2023) ("[T]he Court may compel a party to arbitrate where it failed to comply with an agreement to arbitrate, and to stay proceedings in any matter subject to arbitration.") (citing *Romanov v. Microsoft Corp.*, No. 21-cv-3564, 2021 WL 3486938, at *3 (D.N.J. Aug. 9, 2021) and 9 U.S.C. §§ 2-4).

In determining whether to compel arbitration, courts rely on the principles of applicable state law. *See Golden Gate Nat'l Senior Care, LLC v. Addison*, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014). Here, the Contract was apparently formed in the Virgin Islands and the Court will apply Virgin Islands law. Under Virgin Islands law, "arbitration is a matter of contract, and courts should strive to implement the intent of the parties." *Gov't of the V.I., Dep't of Ed. v. St. Thomas/St. John Educ. Adm'rs Ass'n, Local 101,* 67 V.I. 623, 638 (2017) (citation modified); *see also Whyte v. Bockino,* 69 V.I. 749, 764 (2018) ("General principles of contract apply to arbitration contracts."). "In the Virgin Islands, a valid contract requires a bargain in which there is a mutual assent to the exchange, and consideration." *Valentin v. Grapetree Shores*, No. SX-11-cv-305, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015) (citation modified). "A party's signature on a contract is a clear manifestation of assent."

*Rivera v. Sharp*, No. 08-cv-0020, 2021 WL 2228492, at *8 (D.V.I. June 1, 2021), *aff'd* No. 21-2254, 2022 WL 2712869 (3d Cir. July 13, 2022). In addition, "in an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration." *Valentin*, 2015 WL 13579631, at *3.

**C. Analysis**

Ms. Hendrickson's Opposition to the Motion to Compel focuses on alleged procedural irregularities (the three Motions to Strike filed by Banco Popular) and equitable issues (the alleged conduct of Banco Popular in causing her termination and failing to provide her with documents from her file). She mentions the Contract, containing the arbitration provisions, only in passing, when she comments that she "had not thought about the contract and considered the documents that confirmed her promotion as a new beginning in management." Dkt. No. 39 at 3. It appears she is saying that she both forgot about the Contract but also that she was under the misapprehension that her promotion somehow represented a new start such that the Contract was superseded.[3] And although she described the Contract as an "Adhesive Employer Contract," *id*., she did so in criticizing "Defendants" for not communicating with her during her promotion (in 2016 or 2021) that the Contract should have been amended and updated. Dkt. No. 39 at 3. In any event, she did not argue at all in her Objection that the Contract was invalid. Her signature on the Contract is also

[3] This view of the Contract was contradicted by the Contract's terms. The Contract provided that it "commenced upon execution and continued indefinitely, unless immediately terminated earlier pursuant to Article IV [Termination] below." Dkt. No. 29-2 at 1.

evidence of her assent to its terms, *Rivera*, 2021 WL 2228492, at *8, and that it was supported by consideration, *Valentin*, 2015 WL 13579631, at *3, the two elements necessary for a valid contract in the Virgin Islands. *Sunshine Shopping Ctr. Inc. v. LG Elecs. Panama, S.A.*, No. 15-cv-0041, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018). The Court thus concludes a valid Contract, containing an agreement to arbitrate, exists. *Flintkote Co.*, 769 F.3d at 220.

A review of the Contract also shows that Ms. Hendrickson's claims fall within the scope of the arbitration provisions contained therein. *Id.* Article VI of the Contract, "Intention of the Parties," which appears directly above the signature line, provides that it is

> the specific intention and understanding of the parties to provide for binding Arbitration as provided for in Article V above for any statutory causes of action or actions arising out of tort, or arising out of the employment relationship or termination of the employment relationship, including but not limited to Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act, the Civil Rights Enforcement Statute of 1981, the Civil Rights Act of 1991. . . and Titles 10 and 24 of the Virgin Islands Code.

Dkt. No. 29-2 at 4. Article V, entitled "Binding Grievance and Arbitration Procedure," sets out the procedure to be followed in addressing "[a]ny grievance over a discharge or termination," that, after being reviewed by bank personnel, would be handled by an arbitrator who would have "jurisdiction and authority only to determine if the employee was discharged or terminated for just cause[.]" *Id*. at 2-3. If the arbitration was held as a result of an employee's claims of statutory violations or torts arising out of the contract (enumerated in Article VI that include Title VII claims), the arbitrator would have authority to rule on those causes of action and award damages if applicable. *Id*. at 3. Moreover, the parties "specifically agreed . . . that the sole, final, binding and exclusive remedy for a breach of this

contract is through this grievance and arbitration procedure and that the arbitrator's decision is final and binding on the parties." *Id*. Finally, Article II of the Contract provides that the Contract commenced upon its execution and continued "indefinitely" unless terminated earlier under Article IV. *Id.* at 1.

The Title VII causes of action raised in the Complaint—discrimination under Title VII of the Civil Rights Act of 1964, as amended—were explicitly covered by the Contract's arbitration provisions. Dkt. No. 29-2 at 4. Having examined the Complaint and the Contract to determine if any reading of these documents could relieve Ms. Hendrickson of the obligation to arbitrate, *Parker,* 2019 WL 2521537, at *2, the Court answers that question in the negative and will grant Banco Popular's Motion that seeks to Compel Arbitration.

And as indicated above, pursuant to the FAA, 9 U.S.C. § 3, a party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration. *In re Pharm Benefit Managers Antitrust Litig.*, 700 F.3d at 116. The Court will therefore stay the litigation in this case pending the outcome of the arbitration proceedings.

## II. Motion to Strike

Ms. Hendrickson's challenge to the Motion to Compel arises not in her Objection, but in the context of a Motion to Strike. She cites case law holding that a court may strike documents under both Rule 12(f) as well as under a court's inherent authority. Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses

being pleaded. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action." *Vite Techs., LLC v. Smith & Nephew, Inc.*, No. 14-cv-1507, 2015 WL 4486785, at *2 (D. Del. July 23, 2015) (citation modified). The Rule, by its terms, applies only to pleadings, and an opposition to a Motion to Compel/Motion to Dismiss is not a pleading. *See* Fed. R. Civ. P. 7(a).

Ms. Hendrickson also points to case law holding that courts may strike filings based on its inherent authority to control the docket. Dkt. No. 39 at 9. That is a correct statement of the law. This Court has held that "case law provides that a court may strike improper filings from its docket pursuant to its inherent authority to control its docket." *Vivot Equip. Corp., v. Underwater Mechanix Servs., LLC*, No. 23-cv-0009, 2024 WL 231450, at *3 (D.V.I. Jan. 22, 2024) (citing *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) ("A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases."); *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-cv-1283, 2015 WL 3966434, at *3 (W.D. Pa. June 8, 2015) (holding that, in a court's exercise of its inherent authority to control its docket, it may strike from the record an improperly filed document) (citing cases). While striking a document on the basis of its inherent authority does not contain the kind of standard included in Rule 12(f) (the document must be redundant, immaterial, impertinent, or scandalous), courts have struck documents pursuant to its inherent authority that it determines "to be abusive or otherwise improper under the

circumstances." *In re Bear Stearns Cos., Inc. Secs. Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011); *see also Weer v. Hess Oil V.I. Corp.*, No. SX-05-cv-274, 2016 WL 1019689, at *8 (V.I. Super. Ct. Mar. 15, 2016).

Rather than opposing the Bank's Motion to Compel on the merits, Ms. Hendrickson seeks to strike it altogether on certain procedural and equitable grounds arising from (1) various pre-litigation interactions between Ms. Hendrickson and the Bank and (2) the alleged impropriety of Banco Popular filing three Motions to Compel in violation of Fed. R. Civ. P. 12(g). Dkt. No. 39 at 4. Regarding her first rationale, she believes that Banco Popular acted inequitably and improperly in forcing her to resign and then in not providing the employment documents that she requested. But she does not make any connection between these perceived inequities and why they might provide a basis to strike the Motion to Compel. The Motion to Compel/Dismiss that Ms. Hendrickson objects to directly pertains to the employment relationship and how certain disputes arising from termination of that relationship—covering the claims she raises in her Complaint—are to be handled. Many of the allegedly improper actions of Defendant's counsel occurred before the case was even filed, and the docketing of the Motion to Compel/Motion to Dismiss was not improper in any way. It appears to the Court Ms. Hendrickson wishes to strike the motion merely because she objects to the relief requested. But that is not a basis to file a Motion to Strike, much less to file a successful Motion to Strike.

The second reason Ms. Hendrickson seeks to strike the Motion to Compel is based on her belief that Banco Popular flouted Court Rules and Orders—in particular, Fed. R. Civ. P.

12(g)(2) and Court Orders striking earlier iterations of the Motion to Compel/Motion to Dismiss. But this position is based on a misunderstanding of the procedural history of this case. The Court sua sponte struck the Bank's first Motion to Compel/Motion to Dismiss because it did not comply with the Local Rules—the Bank had not attached a Certificate of Service showing proper service on Ms. Hendrickson. Dkt. No. 15. This filing was thus a nullity and did not count as a filing under Rule 12(g)(2). The Court also denied the Bank's second Motion to Compel/Motion to Dismiss, *without prejudice*, because the attached contract showed it was signed by Leslie Yarwood, a stranger to the litigation, not Leslie Hendrickson. Dkt. No. 28. The denial without prejudice permitted Banco Popular to refile the motion to address the infirmity that caused its denial. *Smith v. Innovative Tele. Corp*., No. 13-cv-0108, 2018 WL 4558984, at *3 (D.V.I. Sept. 21, 2018). The Court therefore permitted Banco Popular to file its third Motion to Compel/Motion to Dismiss. These filings did not run afoul of Rule 12(g)(2), nor was the motion tainted by fraud, bad faith, and/or unclean hands. Therefore, the Court will deny Ms. Hendrickson's Motion to Strike. It also cautions her to refrain from casting aspersions on her opponent. She is certainly free to oppose the relief the Bank seeks, but she must do so in a respectful manner.

## III. Motion to Stay

Banco Popular has filed a Renewed Motion to Stay the Court's September 2, 2026 Order Setting Initial Conference, seeking to stay discovery pending the Court's resolution of its Motion to Compel/Motion to Dismiss. Dkt. No. 30. Because the Court has granted the Motion to Compel Arbitration, and will stay this litigation while the arbitration proceeds, *see*

*In re Pharm. Benefit Managers Antitrust Litig.*, 700 F.3d at 116, the Court will deny the Motion to Stay as moot.

**IV. Motion for Entry of Default**

On September 18, 2026, Ms. Hendrickson filed a Second Request for Entry of Default. Dkt. No. 37. She argues that the Defendant was served with the Complaint on July 27, 2026; proof of service was filed on August 5, 2026; Banco Popular's response was due on August 17, 2026; and it filed a Motion to Compel Arbitration or in the Alternative, to Dismiss for Failure to State a Claim on August 17, 2026. *Id*. at 1-2. The Court struck that initial Motion to Compel because it did not comply with the Local Rules. Ms. Hendrickson argues that Banco Popular has not properly pleaded or otherwise defended this case because the initial Motion to Compel had been stricken, it did not remain an operative response, and the time expired for the Bank to timely file a responsive answer to the Complaint. *Id*. at 2-4. Ms. Hendrickson acknowledges that the Third Circuit strongly prefers adjudication of cases on the merits and disfavors defaults, *id.* at 3, and that a filing or appearance may demonstrate an intent to defend even if it is procedurally defective, *id.* at 4. Nevertheless, despite the fact that the Defendant filed a timely, albeit defective, response to the Complaint, and subsequently corrected its deficiency and filed a response, Ms. Hendrickson states that the Bank failed to submit a compliant pleading or otherwise defend, and she seeks an entry of default. *Id*. The Bank filed an Opposition on October 2, 2026. Dkt. No. 44.

The Court will deny that relief. As Ms. Hendrickson concedes, the Third Circuit disfavors defaults, *Hritz v. Woma Corp*, 732 F.2d 1178, 1181-83 (3d Cir. 1984), preferring to

adjudicate cases on their merits. In this case, Banco Popular timely interposed a response to the Complaint by filing its initial Motion to Compel/Motion to Dismiss. Although the Court concluded that that motion was defective, that filing timely responded to Ms. Hendrickson's Complaint and provided notice that the Bank would be defending this action. While it took two more tries for the Bank to properly file the motion, it addressed the deficiencies pointed out by the Court immediately, manifesting good faith.

A court may decline to enter default when it is "apparent that [the default] would be set aside on a motion by defendants," 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2682 (3d ed.1998); *Stevens v. Wiggins,* No. 90-cv-7038, 1991 WL 152960, at *1 n. 2 (E.D. Pa. Aug. 6, 1991) ("Although Rule 55(a) states that the Clerk of Court may enter default, the court also has that power."). A court considers three factors in evaluating whether to set aside an entry of default: (1) the potential prejudice to the plaintiff; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's conduct was culpable. *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir. 2000). Here, the issue is not that the Court should set aside an entry of default but that a default should be entered in the first instance. The Court will nevertheless apply the above test. In doing so, it concludes there is no basis to enter default. Plaintiff would not be prejudiced in advancing her claims because she could do so before an arbitrator; the Bank has a meritorious defense (indicated by the Court having granted its Motion to Compel Arbitration); and the Bank's conduct was not culpable—its errors in filing the initial Motions to Compel were merely negligent, not willful or in bad faith. On this record, even if the Court were to enter a default, it is apparent

that it would be set aside upon motion by the Bank. The Court cannot find any basis to grant Ms. Hendrickson's Second Motion for Entry of Default, and it will deny the motion.

**CONCLUSION**

Accordingly, it is hereby **ORDERED** that:

1. Defendant's Renewed Motion to Compel Arbitration, Dkt. No. 29, is **GRANTED**. This matter is hereby referred to arbitration.
2. This action is **STAYED** pending the outcome of the arbitration proceedings.
3. Defendant's Renewed Motion to Stay the Court's September 2, 2026 Order Setting Initial Conference, Dkt. No. 30, is **DENIED AS MOOT**.
4. The Initial Conference scheduled for November 2, 2026 is **TERMINATED**, as are the discovery deadlines set forth in the September 2, 2026 Order, Dkt. No. 25.
5. The parties shall file a status report with the Court by **April 1, 2027 and every six months thereafter** concerning the status of the arbitration proceedings.
6. Plaintiff's Motion to Strike, Dkt. No. 39, is **DENIED**.
7. Plaintiff's Second Motion for Entry of Default, Dkt. No. 37, is **DENIED**.

ENTER:

Dated: October 5, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE